TRANS–WESTERN PETROLEUM, INC., a Colorado corporation, Plaintiff–Appellant/Cross–Appellee,

v.

UNITED STATES GYPSUM COMPANY, an Illinois corporation, Defendant–Appellee/Cross–Appellant.

Nos. 13–4012, 13–4021.

United States Court of Appeals, Tenth Circuit.

May 22, 2014.

Stephen K. Christiansen, Esq., Thomas W. Clawson, Sam Meziani, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, for Plaintiff–Appellant.

Matthew Ball, Daniel Barnett, Patricia W. Christensen, Parr Brown Gee & Loveless, Salt Lake City, UT, for Defendant–Appellee.

Before KELLY, LUCERO, and HOLMES, Circuit Judges.

## ORDER CERTIFYING QUESTION TO UTAH SUPREME COURT *

PAUL KELLY, JR., Circuit Judge.

This diversity case involves a 2004 oil and gas lease with a five-year term between Trans–Western Petroleum, Inc. ("Trans–Western") and United States Gypsum Co. ("USG"). Although several issues are raised in Trans–Western's appeal and USG's cross-appeal of the district court's grant of partial summary judgment to Trans–Western, the sole issue for which we seek certification is the proper measure of expectation damages, assuming that the lease between the two was indeed breached.[1] Trans–Western argues that it is entitled to expectation damages based on the fair market value of the lease during its five-year term, which peaked in late 2007 to early 2008. USG argues that expectation damages are calculated at the time of the breach, which occurred with its rescission in 2004. Because the disposition of

---

* This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

1. Although USG argues that it did not breach the lease but rescinded it based on either

mutual or unilateral mistake, Aplee. Br. 42, we are assuming breach for certification purposes.

this appeal turns on an important and unsettled question of Utah law, we respectfully request the Utah Supreme Court exercise its discretion to accept the following certified question in accordance with Tenth Circuit Rule 27.1 and Utah Rules of Appellate Procedure, Rule 41:

How should expectation damages be measured for the breach of an oil and gas lease?

## Background

USG owns the oil and gas underlying 1,700 acres of land in Sevier County, Utah. Aplt. App. 592. In 1995, USG entered into an oil and gas lease with Dale E. Armstrong ("Armstrong"), who subsequently assigned the lease to Wolverine Oil & Gas Corp. ("Wolverine"). Aplt. App. 592. The Wolverine lease was extended to nine years, through August 17, 2004. Aplt. App. 592.

In 2004, Douglas Isern, the owner and sole officer of Trans–Western, heard rumors that Wolverine had discovered oil in the area. Aplt. App. 591, 593. After researching county records, Isern discovered the Armstrong lease and called USG, expressing interest in leasing the land upon expiration of the Wolverine assignment. Aplt. App. 593. Isern followed up by sending USG a proposed lease, with a term of five years beginning August 17, 2004 at $19/acre (or $32,680) along with the right of assignment. Aplt. App. 593–94. On September 15, 2004, USG executed the lease. Aplt. App. 594.

Soon after, on October 1, 2004, both Trans–Western and USG received a letter from Wolverine protesting the recording of the lease. Wolverine claimed that its lease with Armstrong remained valid under pooling and unitization provisions con-

tained in that lease. Aplt. App. 594. USG responded by rescinding the lease with Trans–Western both orally, through a phone conversation with Isern, and in writing, via a letter to Isern dated October 7, 2004. Aplt. App. 595. The value of Trans–Western's lease did not change during the three weeks from the date of its execution to the date of its rescission. Aplt. App. 595.

Two years later, in 2006, Trans–Western brought suit against Wolverine, seeking a declaratory judgment that Wolverine's lease with USG had expired on August 17, 2004. Aplt. App. 595. The district court determined that the Wolverine lease had expired, Aplt. App. 595, and its determination was affirmed on appeal. *Trans–Western Petroleum, Inc. v. U.S. Gypsum Co.*, 584 F.3d 988, 994 (10th Cir.2009).

Armed with the determination that the Wolverine lease was no longer in effect, in 2010, Trans–Western brought suit against USG, seeking a declaratory judgment that its lease with USG was valid and damages for breach of contract and of the covenant of quiet enjoyment, among other claims. Aplt. App. 147–49, 595. Trans–Western then moved for partial summary judgment, which USG opposed based primarily on the theories of mutual or unilateral mistake of fact. Aplt. App. 231, 595. The district court granted partial summary judgment to Trans–Western, determining that USG had breached the lease but denied attorney's fees [2] due to disputed material facts on damages. Aplt. App. 237–38, 595.

During a bench trial on damages, Trans–Western contended that it was entitled to expectation damages for both breach of contract and breach of the covenant of quiet enjoyment because USG de-

---

**2.** Trans–Western argues that it is due attorney's fees as consequential damages because

it had to pursue third-party litigation against Wolverine. Aplt. App. 214–16.

prived it of the opportunity to assign the lease during its five-year term.[3] Aplt. App. 330–35, 596. According to Trans–Western, it would have assigned the lease in late 2007 or early 2008 for a minimum of $2,500 to $3,500 per acre (at least $4.3 million total) during the market's peak—and before the price dropped precipitously in 2009 after a dry hole was drilled. Aplt. App. 314, 338, 596.

USG contended, inter alia, that damages for the breach of an oil and gas lease, like any real property, are measured at the date of breach—which occurred on October 7, 2004, when USG notified Trans–Western of its rescission—and not conveniently pegged to a hypothetical sale at the market's peak. Aplt. App. 317, 596–97.

The district court rejected Trans–Western's damages theories, finding that Trans–Western was entitled only to nominal damages based on the value of the contract on the date of breach, which had not increased since the date of execution. Aplt. App. 597–601, 608. However, the district court noted that Utah's courts had yet to specifically address the calculation of damages involving an oil and gas lease. Accordingly, the district court relied on *Tenneco Oil Co. v. Gaffney*, 369 F.2d 306, 309 (10th Cir.1966), which applied Wyoming law and concluded that damages should be measured at the date of the breach and rejected damages based upon a possible assignment during the market's peak. Aplt. App. 597–600. The district court also noted that in *Justheim Petroleum Co. v. Hammond*, 227 F.2d 629, 636–37 (10th Cir.1955), the court applied Utah law in determining that damages for

breach of a contract to purchase property or an interest in property are measured by the difference between the contract price and the market value of the property at the time of breach. Aplt. App. 600.

Although both parties have appealed, our focus at this point is whether the district court properly determined expectation damages based on the date of breach.[4]

### Discussion

Trans–Western presents two damages theories for purposes of certification: expectation damages for breach of contract and expectation damages for breach of the covenant of quiet enjoyment. We address each briefly.

### A. Expectation Damages for Breach of Contract

Under Utah law,

[T]he injured party in a breach of contract action has a right to damages based upon his expectation interest as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform.

*TruGreen Companies, L.L.C. v. Mower Bros., Inc.*, 199 P.3d 929, 931 (Utah 2008) (internal quotation marks and citation omitted).

Here, the district court awarded Trans–Western only nominal damages under its

---

**3.** Trans–Western also argued in the alternative that it was entitled to consequential damages. Aplt. App. 335–36, 602. The district court rejected that claim.

**4.** Trans–Western sought certification of two questions on expectation damages (for breach

of contract and breach of the covenant of quiet enjoyment), *Trans–Western Petroleum v. United States Gypsum Co.*, Nos. 13–4012 & 13–4021 (10th Cir. May 24, 2013), which we combined into a single question for purposes of this certification.

expectation damages theory for breach of contract because it determined that damages are based on the value of the lease at the time of breach—and not after. Aplt. App. 600 (citing *Tenneco*, 369 F.2d at 309, and *Smith v. Warr*, 564 P.2d 771, 772 (Utah 1977) (the measure of damages is the market value of the property at breach less the contract price)).

Trans–Western argues that the district court erred because its reasoning (1) is without support in Utah law; (2) fails to provide Trans–Western with the benefit of the bargain, which would have been its ability to assign the lease during the lease's five-year term; (3) overlooks the unique, hybrid nature of an oil and gas lease as "both a contract and a conveyance, with continuing obligations," Aplt. Br. 26; (4) misapplies the holdings in *Tenneco* and *Justheim*; and (5) analogizes to conversion damages instead of fluctuating land values. Aplt. Br. 25–37. Rather, Trans–Western argues that it should be placed in as good a position as if the contract had been performed by awarding it the amount for which it could have assigned the lease during the lease term. Aplt. Br. 29. In contrast, USG argues, inter alia, that Trans–Western misapprehends the nature of a breach of contract by construing it as a rolling breach, when, in fact, a complete rescission occurred on October 7, 2004; thus, calculating damages at the date of breach was proper under either property or contract law. Aplee. Br. 44.

B. *Expectation Damages for Breach of the Covenant of Quiet Enjoyment*

The district court also rejected Trans–Western's claim of expectation damages for breach of the covenant of quiet enjoyment based on the same analysis of the breach of contract claim, explaining that breach of the covenant of quiet enjoyment "is itself a claim for breach of contract." [5] Aplt. App. 602.

Trans–Western argues that the district court's conclusion is without supporting authority, and, to the contrary, a lessee is entitled to damages every time the lessor refuses to yield possession of the premises to the lessee. Aplt. Br. 40–41 (citing cases). Thus, according to Trans–Western, USG continued to breach the covenant each year it interfered with Trans–Western's lease of the area. Aplt. Br. 41. USG argues that, as with the breach of contract, its complete rescission of the lease ended any implied covenants of quiet enjoyment; thus, the district court properly measured damages at the time of breach. Aplee. Br. 60 (citing *Holmes Dev. LLC v. Cook*, 48 P.3d 895 (Utah 2002)).

The measure of expectation damages has yet to be addressed by a Utah state court in the context of a breach of an oil and gas lease. The legal issue is an important one, the resolution is firmly within the province of Utah law, and there appears to be no controlling Utah law.

### Certification of the Question to the Utah Supreme Court

In light of the lack of precedential decisions on point, and in furtherance of comity and federalism, we conclude that the Utah Supreme Court should have the opportunity to answer this important question on expectation damages in the first instance. We recognize the discretion of the Utah Supreme Court to reformulate the question posed.

The Clerk of this court is directed to transmit a copy of this certification to

---

**5.** The district court also noted that Trans–Western provided no argument that breach of an implied contract (the covenant of quiet enjoyment) should be measured differently from breach of an express contract. Aplt. App. 602.

counsel for all parties to the proceedings in this suit. The Clerk shall also submit to the Clerk of the Utah Supreme Court, under our court's official seal, a copy of this certification order, together with copies of the briefs filed in this court, and either the original or a copy of the appendix in this court. We greatly appreciate the consideration of this request.

Thus, Trans–Western's Motion to Certify Questions of State Law to the Utah Supreme Court is GRANTED. This appeal is ordered ABATED pending resolution of the certified question.