## PETERSON v. JOHNSON

No. 5385. Decided July 27, 1934. (34 P. [2d] 697.)

*J. Vernon Erickson,* of Richfield, for appellant.
*Henry E. Beal,* of Richfield, for respondent.

ELIAS HANSEN, Justice.

Plaintiff brought suit to acquire title to eighteen acres of land in Sevier county, Utah. Defendant answered denying plaintiff's title and alleged that he (defendant) is the owner of about one acre of the land claimed by plaintiff. The claim of defendant to the land in controversy is bottomed on an alleged long-established boundary line between his land and the land claimed by plaintiff. A trial to the court, sitting without a jury, resulted in a decree quieting in plaintiff the title to the land in dispute. Defendant appeals. Error is assigned because the trial court failed to find that a boundary line between plaintiff's and defendant's lands had been established and acquiesced in for such a long period of time as to preclude plaintiff from questioning such boundary as the true line dividing their premises and that the evidence was insufficient to support the finding that plaintiff is the owner of the land claimed by him.

The evidence without substantial conflict shows the following facts: The land owned by the defendant and that claimed by plaintiff are coterminous. About thirty or forty years prior to the commencement of this suit, one Mr. Peterson erected a fence consisting of posts to which were attached barbed wires along the line which defendant claims is the established line between his land and that claimed by plaintiff. At the time the fence was erected, Mr. Peterson (not the plaintiff) was the owner of the land now owned by defendant. The land now claimed by plaintiff was a part of the public domain at the time the fence was erected. For

about ten or fifteen years the fence so erected by Mr. Peterson was kept in repair. The land inclosed within the fence was planted to grain a year or two, but for the most part was used for pasture. About twenty-five years before this suit was commenced, Mr. Peterson disposed of the land now owned by defendant, and soon thereafter the fence was allowed to get out of repair. The barbed wire became unfastened from the posts and some of the posts were broken off. About twelve years before the trial of this cause, a Mr. Oldroyd refastened the wire to the posts and used the land for one summer as a pasture for his horses. The fence was again permitted to get out of repair and remained so until a short time before this suit was begun, when defendant erected a new fence along the line of the old fence. A few of the posts which were in the old fence were still standing and these were used in the newly erected fence. The record is silent as to when the land now claimed by plaintiff was segregated from the public domain. Plaintiff's title is founded upon a quitclaim deed from Rudolph Rickenbach, Jr., who in turn acquired such title as he had from Sevier county. The deed from Rickenbach to plaintiff was received in evidence. The deed from Sevier county to Rickenbach was not offered or received in evidence. During the course of the trial the following occurred:

Mr. Beal (counsel for plaintiff): "May it be stipulated, Mr. Erickson, that the deed for this is from the county without introducing the deed itself?"

Mr. Erickson (counsel for defendant): "I will admit that the county gave him (Rickenbach) a quit claim deed to this tract of land described in the complaint."

The Court: "And that his quit claim deed included the tract of ground in dispute?"

Mr. Erickson: "I cannot stipulate to the validity of the deed but I would stipulate that he received a deed from the county to this land approximately as described."

Mr. Rickenbach testified without objection that he received a deed from Sevier county to the property which he

later conveyed to the plaintiff. At first it was stated by the witness that he supposed it was a warranty deed, but later he said it was a tax sale deed. The record is silent as to who owned the land prior to the time it was sold for taxes. It is further made to appear that the strip of land in dispute is within the description contained in plaintiff's deed and that defendant has all of the land covered by the description of his deed independent of the land in controversy. So far as appears, neither defendant nor his predecessors in interest had paid any taxes on the land in dispute, nor had they placed any improvements thereon other than the fence along the line which defendant seeks to have adjudicated as the boundary line.

It is clear that defendant has failed to make out a case entitling him to title by adverse possession because there is no evidence that either he or his predecessors paid any taxes on the disputed strip of land. Rev. St. Utah 1933, 104-2-12. So far as is made to appear, no permanent improvements were placed on the land in question and hence defendant is not in a position to invoke the doctrine of equitable estoppel in aid of his claim. *Tripp* v. *Bagley,* 74 Utah 57, 276 P. 912, 69 A. L. R. 1417. Nor does the evidence support defendant's claim that he acquired title under the doctrine of an express agreement fixing the boundary line or long acquiescence in the boundary line claimed by him. No claim is made that any agreement was ever entered into by the parties in interest fixing the boundary line between plaintiff's and defendant's land, nor is there any evidence that the location of the true boundary line was not known or that there was any dispute prior to the commencement of this suit as to the boundary line. The mere fact that the defendant's predecessors in title inclosed within his fence a strip of land not covered by his deed and that such fence has been maintained for a long period of time does not vest title in such land in the defendant. *Tripp* v. *Bagley,* supra. Moreover, one may not acquire title to

any part of the public domain by inclosing the same within his fence or by adverse possession. *Utah Copper Co.* v. *Eckman,* 47 Utah 165, 152 P. 178. Defendant having thus failed to establish in himself any title to the property in dispute, it follows that he has no just cause to complain because he was not granted any affirmative relief.

It is earnestly urged on behalf of defendant that palintiff failed to establish any title to the property in question. Such contention is founded upon the fact as shown by the evidence that plaintiff's grantor acquired his title by a tax deed from Sevier county. It is apparently defendant's position that he may not be deprived of his possession of the disputed strip of land and of his claim of title except by one who establishes a superior claim thereto, and that plaintiff failed to establish any title. Our attention is directed to the following cases which defendant cites in support of his position: *Olsen* v. *Bagley,* 10 Utah 492, 37 P. 739; *Eastman* v. *Gurrey,* 15 Utah 410, 49 P. 310; *Asper* v. *Moon,* 24 Utah 241, 67 P. 409. The cited cases are authority for the doctrine that one whose title is founded upon a tax deed must prove a strict compliance with the various provisions of the statute regulating the levy of taxes and the sale of the property upon which the tax has become delinquent when such tax title is asserted against the original owner or one claiming under him. A different rule is applied when a tax deed is asserted against a mere intruder. In such case it has been held that a purchaser at a tax sale has all that is required against one who enters without right. Black on Tax Titles, §445, p. 564; C. J. 1396, and cases cited in the footnotes. It is not necessary, however, to determine whether the defendant's claim to the land in question was such as to entitle him to question the tax deed issued to plaintiff's grantor, because defendant did not attempt to attack such deed. While in his answer, defendant denied generally plaintiff's ownership of the land described in his complaint, it is apparent from the pleadings and the evidence that the sole issue tried out was

whether or not defendant had acquired title to the strip of land within his inclosure by reason of his claim of a long-established boundary line. The only evidence offered concerning the tax deed was the mere fact that such a deed had been given to plaintiff's grantor. Defendant, through his counsel, stipulated that such a deed had been given. The record is silent as to the owner of the land before it was sold for taxes. So far as is made to appear, Mr. Rickenbach, plaintiff's grantor, may have been the owner of the land before it was sold for taxes, in which event the invalidity of the tax deed would not aid the defendant. In the absence of some evidence tending to show the invalidity of the tax deed issued by Sevier county to plaintiff's grantor, it may not be said that plaintiff failed to make out a prima facie title to the land claimed by him.

The judgment is affirmed. Respondent is awarded his costs.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.