JACK B. PARSON CONSTRUCTION COM-
PANY, Plaintiff, Appellant and
Cross-Respondent,

v.

STATE of Utah, Defendant, Respondent and
Cross-Appellant.

No. 14212.

Supreme Court of Utah.

July 9, 1976.

LaVar E. Stark, Ogden, Robert G. Tay-lor, Seattle, Wash., Robert J. McNichols, Spokane, Wash., for appellant.

Vernon B. Romney, Atty. Gen., Leland D. Ford, Asst. Atty. Gen., Salt Lake City, for respondent.

TUCKETT, Justice:

Plaintiff initiated these proceed-ings in the District Court of Salt Lake County, wherein it seeks to recover a sum it claims due on a construction contract entered into with the state of Utah. Un-der the terms of the contract, the plain-tiff undertook to surface the highway known as Interstate 80 between Wendover and Knolls. The contract between the parties is a "unit price" contract, wherein the plaintiff submitted a proposal which contained the unit price per item based on the quantities specified in the State's pro-posal. The contract was for an original amount of $2,773,828.80. The contract en-tered into contained various specifications. Section 104.02 which deals with the prob-lem in this case is as follows:

104.02 Alteration of Plans or Charac-ter of Work: The Engineer reserves the right to make at any time during the progress of the work, such increases or decreases in quantities and such altera-

tions in the details of construction, including alterations in the grade or alignment of the road or structure or both, and the elimination of one or more items as may be found necessary or desirable. Such alterations shall not be considered as a waiver of any conditions of the contract nor invalidate any of the provisions thereof nor release the surety. The Contractor agrees to accept the work as altered the same as if it had been a part of the original contract, provided, however, that if demand is made in writing by either party to the contract, a supplemental agreement will be necessary before any alteration is made which involves any one of the following:

(1) An extension or shortening of the length of the project of more than 25%.

(2) An increase or decrease of more than 25% of the total cost of the work, calculated from the *original proposal quantities* at the unit contract prices. [Emphasis added.]

During the performance of the contract additional work was added to the contract in the sum of $84,045 which made the total contract price $2,857,874. The total amount paid to the plaintiff by the state was $2,052,780. The amount paid when deducted from the total contract price was $805,094 less than the original price plus the change orders for additional work. The state in arriving at an adjusted final payment under the contract deducted from the total contract price change orders which reduced the amount of the total work in the sum of $133,765. By its method of calculation, the state arrived at an underrun of 22.3%. The plaintiff on the other hand calculated the balance due under the contract and did not take into consideration the change orders which reduced the contract price and as a result an underrun of 26.74% was arrived at.

It appears that during the course of the proceedings the terminology "change orders" and "supplemental agreement" were used interchangeably and though a modification agreement is included in the record on appeal, we do not have the benefit of examining the language of a "change order." However, the language of the specifications above set forth reserves to the state the right to make changes in the quantities and alter the details of construction as may be found necessary or desirable. Such changes may be made and apparently were made during the performance of this contract unilaterally. On the other hand the supplemental agreement is one which must be assented to by both of the contracting parties. In making a determination of whether or not there was an overrun or an underrun in a particular contract the language of the above referred to specification is controlling. The language is clear and unambiguous and states that the percentage must be calculated from the original proposed quantities. The case of *Wussow v. State* [1] cited by both parties dealt with language similar to that of the specifications above mentioned. The Wisconsin court was of the opinion that the language was clear. We are also of that opinion. We conclude that the calculation of the final contract price must be based on the original proposal which does not permit the state to deduct from the original contract price the change orders reducing the quantities. To decide otherwise would permit the state to greatly alter the terms of a contract by the simple device of issuing minus or plus change orders. It is undoubtedly true that the contractor in arriving at his bid price did so by calculating the price per unit for the number of units specified in the original proposals. A substantial reduction in the amount of work to be performed would tend to increase this unit cost and may in certain instances compel him to accept a loss he could not anticipate or guard against.

■ The State cross appeals, claiming that the plaintiff should not have been

awarded pre-judgment interest as was provided in the judgment. The amount due under the contract was ascertainable by calculation and it was only the method to be used in making the calculation that was uncertain. We hold that awarding of pre-judgment interest was proper in this case and in conformity with the prior decisions of this court.[2]

This case is remanded to the court below to modify its judgment in accordance with this opinion. No costs awarded.

HENRIOD, C. J., and MAUGHAN, J., concur.

ELLETT, Justice (dissenting).

There is no disputed issue of fact in this case. The only thing to be determined is the construction of the contract.

Paragraph 104.02 of the specifications of the contract is set out in the prevailing opinion. It provides that the engineer for the state has the right to make increases or decreases in quantities of materials used and alterations in the construction of the road as may be necessary or desirable; and that such alterations do not invalidate any of the provisions of the contract. The contract further provides that the alterations are considered to be a part of the original contract. It further provides that if a demand is made in writing by either party, a supplemental agreement will be necessary before any alteration is made which involves an increase or decrease of more than 25% of the total cost of the work calculated from the original proposal quantities at the unit prices. The standard specifications for road and bridge construction state:

The contract includes—any change orders and agreements that are required to complete the construction of the work in an acceptable manner, including autho-

rized extensions thereof, all of which constitute one instrument.

The "change order" can be made by the engineer and the contractor is obligated to follow it. If it is a supplemental agreement, it is beyond the scope of the original contract and cannot be forced upon the contractor. He may demand a written contract covering the work, or he may by action accept the offered terms to do the extra work without demanding a new written agreement.

The contract between the parties to this appeal provided that there would be a re-negotiation of the original contract if the cost, based upon original proposal quantities at the unit contract price is 25% more or less than the contract price. The facts of this case are stipulated to, and are as follows:

1. The contract price was $2,773,828.-80.

2. The change orders for additional work amounted to $84,044.87.

3. The change orders for deleted work was $133,768.67.

4. The plaintiff was paid $2,052,779.-93.

5. The State withheld money for work which did not measure up to specifications in the amount of $63,349.61.

The plaintiff calculates the percentage of increase or decrease as follows:

| | | |
|---|---|---|
| Original Contract Price | | $2,773,828.80 |
| Work done and paid for: | $2,052,779.93 | |
| Less: payments for extras | 84,044.87 | |
| Total Over Extras | $1,968,735.06 | |
| Add: penalty for improper work | 63,349.61 | |
| Value of project per contract: | $2,032,084.67 | $2,032,084.67 |
| TOTAL DIMINUTION FROM CONTRACT: | | $ 741,744.13 |

2. *Fell v. Union Pacific R. Co.*, 32 Utah 101, 88 P. 1003; *Uinta Pipeline Corp. v. White Superior Co.*, 546 P.2d 885 (Utah 1976).

The $741,744.13 is the difference between the original contract price and the amount paid. The percentage of diminution of the work provided in the contract is, therefore, $741,744.13 divided by $2,773,828.80 or 26.-74%.

The trial court correctly rejected this formula for calculating the percentage of decrease in the amount of work called for in the contract. All increases and all decreases in the work relating to that called for in the contract should be considered in making the calculation.

The plaintiff had the burden of showing that there was a diminution in work of more than 25%. In order to eliminate a figure from the calculation, he would need to show that the extra work had nothing to do with the project. This he failed to do. The correct calculation would, therefore, be:

| | | |
|---|---:|---:|
| Original Contract Price | | $2,773,828.80 |
| Add: extra change order | | 84,044.87 |
| | | $2,857,873.67 |
| Deduct: deleted change orders | | 133,768.67 |
| Total Work to be Done per Contract and Amendments | | $2,724,105.00 |
| Work paid for: | $2,052,779.93 | |
| Add: penalty—work done but not to specifications | 63,349.61 | $2,116,129.54 |
| TOTAL DIMINUTION FROM CONTRACT | | $ 607,974.46 |

The correct percentage of diminution would be $607,974.46 divided by $2,724,105.00 or 22.3%.

There being less than 25% change in the work to be done pursuant to the terms of the contract, there is no need for any renegotiation of the contract and the judgment of the trial court should be affirmed.

No costs should be awarded.

CROCKETT, J., concurs in the views expressed in the dissenting opinion of EL-LETT, J.