D. Clark WILLIAMS, Plaintiff
and Respondent,

v.

Merrill L. OLDROYD, Gerald Carter, and
John A. Canto, Defendants and
Appellants.

No. 15313.

Supreme Court of Utah.

June 6, 1978.

Aldrich & Nelson, V. Pershing Nelson, Provo, for defendants and appellants.

Roe & Fowler, William G. Fowler and William G. Marsden, Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendants Carter and Canto appeal from judgment entered against them by the District Court, Utah County, quieting title to certain real property located in Utah County in plaintiff and awarding damages in trespass in the amount of $6,690. (Defendant Oldroyd was dismissed from the case on stipulation of counsel.)

The subject real property is located in Spanish Fork Canyon, Utah, and was, together with surrounding acreage, originally plaintiff's family homestead on which he was raised. In 1954, plaintiff conveyed a portion of his property by deed to a partnership of which he and two other men were partners. Later the partnership was incorporated as Skyview Enterprises, Inc., and all of the stock of the corporation was ultimately sold to Defendant Oldroyd. Oldroyd sold the corporation's property on contract to the Horlachers who later conveyed their interest in the property to their son, Defendant Carter.

The deed to the property now owned by Carter (hereafter referred to as the "Skyview property"), describes, by metes and bounds, a parcel of property 1560 feet long by 300 feet deep, in regular rectangle shape.

Defendants claim that the Skyview property was intended to be a parcel of property enclosed on the south by the north edge of Highway 50 and 6; on the west and north by an irregularly placed fence, along a slanting line which generally follows the south side on a railroad right-of-way; and on the east, by another established fence, which follows the meander line of Tie-Fork Creek. This description produces a highly irregularly shaped tract of land, and not a rectangle. On the northeast corner of such tract, there is a substantial bulge of land, measuring nearly 200 feet by 300 feet outside the rectangular description in the deed, bounded on one side by Tie-Fork Pond and the irregular fence which follows Tie-Fork Creek on the other. It is principally this bulge of land that is in dispute.

Defendants, by counterclaim, prayed for reformation of the deed on the ground of mutual mistake, or in the alternative, to quiet title to the irregularly shaped parcel in Defendant Carter, on the theory of boundary by acquiescence.

During the time the Skyview property was owned by plaintiff's partnership and corporation, a motel, service station and cafe were built on the property, and plaintiff managed these operations. Plaintiff moved from the area in 1963 and did not visit the property until 1970. During his absence, the Horlachers took possession of the Skyview property and prepared the property for campsites by constructing toilets, and establishing electrical connections for campers. Defendant Carter took possession of the property in 1966. In 1970 plaintiff discovered some of the electrical connections on the disputed property and demanded that they be removed. No real dispute over the property arose until 1974, shortly before this action was filed. In that year, Carter employed Defendant Canto to grade the disputed area and portions of the Skyview property in preparation for new campsites. Plaintiff happened to visit the property prior to the time work was commenced in the disputed area, and told Canto that his camp and equipment were on plaintiff's property. Nevertheless, Canto proceeded to grade the disputed area in August of 1974, destroying the vegetation, removing the topsoil, and altering the drainage pattern.

A latent ambiguity in the deed was discovered when the property was surveyed. One of the metes and bounds calls is in conflict with a call to a monument; viz., Highway 50 and 6.

▪ Where there is such ambiguity, monument calls take precedence over calls of courses or distances,[1] and the Court applied that rule here.

Defendants contend that the Court, in relying on this rule of construction reformed the deed in a manner not intended by the parties, and that it erred in not

---

1. *Scott v. Hansen*, 18 Utah 2d 303, 422 P.2d 525 (1966).

reforming the deed in accordance with defendants' claim, noted ante, of the intended description of the parties.

 Applying rules of construction, however, does not constitute reformation of a deed. The description in the deed is followed. In order to reform the deed in this case the description therein would have to be changed drastically to produce the irregular shape contended for by defendants. Such reformation may be made only if the Court finds that a mutual mistake was made by the grantor and grantee of the deed, and that the written deed did not conform to their intent.[2] The original grantor in this case is the plaintiff, and the grantee in the deed is plaintiff's partnership. Of those parties who were privy to that deed, only plaintiff gave evidence. He testified that the parties intended the property as described in the deed, and that he did not intend to convey the property claimed by defendants. Defendants produced no evidence to rebut this testimony. The Court's finding that there were not "sufficient facts to order reformation of the deed" is supported by the record.

Defendants contend that the Court erred in failing to find a boundary line established by acquiescence along the natural and man-made boundaries of the property. In *Fuoco v. Williams,* 15 Utah 2d 156, 389 P.2d 143 (1964), this Court articulated the elements of boundary by acquiescence as: (1) occupation up to a visible line marked by monuments, (2) acquiescence in the line as the boundary, (3) for a long period of years, (4) by adjoining landowners. In the case of *Lane v. Walker,* 29 Utah 2d 119, 505 P.2d 1199 (1973), this Court also stated that acquiescence will be implied if the party against whom the rule is applied has had knowledge that the adjoining owner claimed the line as a boundary.

Here, the District Court found that plaintiff exercised control over the disputed lands for a number of years after his conveyance of the Skyview property to his partnership, and also found that neither the partnership nor Skyview Enterprises, Inc., claimed, occupied or possessed the disputed property. From 1963 to 1970 plaintiff did not visit the property and was unaware of defendant's encroachments on it. Between 1970 and the commencement of this action, plaintiff used the disputed property on several occasions, and Defendant Carter twice offered to purchase it. It is clear that neither of the parties acquiesced in the line as a boundary. The evidence supports the Court's findings and its determination on the issue of acquiescence.

 Last, defendants contend that the award of damages was improper because it was primarily based on plaintiff's own testimony as to the value of the property before and after it was damaged by the grading. Defendants do not argue that an improper measure of damages was used, but only that it was error for the Court to base its judgment on the "self-serving" statement of the plaintiff. It has long been the rule in this State that an owner of real property, who is familiar with his property, is entitled to testify as to its value and to give his opinion thereon.[3] His testimony was admissible; therefore any question about it relates only to the weight given it by the Court. We find that the Court's award damages was supported sufficiently by credible evidence.

Affirmed. Costs to plaintiff.

ELLETT, C. J., and CROCKETT, MAUGHAN and HALL, JJ., concur.

---

**2.** See *Jensen v. Manila Corp. of the Church of Jesus Christ of Latter-Day Saints,* Utah, 565 P.2d 63 (1977).

**3.** See *Provo River Water Users Ass'n v. Carlson,* 103 Utah 93, 133 P.2d 777 (1943).